UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

RAFAEL MENDEZ-SOTO,

          Petitioner

v.

JERRY HOWELL, et al.,

          Respondents.

Case No. 2:17-cv-02640-JAD-DJA

**Merits Order**

[ECF No. 6]

Petitioner Rafael Mendez-Soto pleaded guilty to driving while under the influence of alcohol resulting in death and leaving the scene of an accident in Nevada State Court, and he was sentenced to 96 to 240 months and 72 to 180 months, respectively, for the two convictions.[1] In his single-claim petition, Mendez-Soto seeks a writ of habeas corpus under 28 U.S.C. § 2254 based on a claim that his trial counsel was ineffective in failing to advise him of his right to appeal and in failing to file an appeal on his behalf.[2] I now evaluate this claim on its merits and find that habeas relief is not warranted. So I deny Mendez-Soto's petition, deny him a certificate of appealability, and close this case.

## Background

On July 20, 2014, Mendez-Soto was driving with a blood-alcohol content above the legal limit when he struck another vehicle, killing its driver. Mendez-Soto then left the scene at the accident.[3] He ultimately pleaded guilty to one count of driving while under the influence of

---

[1] ECF No. 9-18.
[2] ECF No. 6.
[3] ECF No. 9-13 at 7–8; ECF No. 11 at 20.

alcohol resulting in death and one count of leaving the scene of an accident.[4] He was sentenced to 96 to 240 months for the DUI with death conviction, and a concurrent 72 to 180 months for leaving the scene of the accident.[5]

Mendez-Soto filed a state habeas petition on June 18, 2015, and a counseled, supplement to his petition on March 1, 2016.[6] Following an evidentiary hearing, the state district court denied Mendez-Soto's petition.[7] The Nevada Court of Appeals affirmed the denial of Mendez-Soto's petition,[8] and remittitur issued on August 9, 2017.[9]

Mendez-Soto's federal habeas petition was filed on April 24, 2018,[10] with a single claim for federal habeas relief: that his trial counsel was ineffective by failing to advise him about the right to appeal and by failing to file a direct appeal as he requested.[11] The respondents answered the petition on June 6, 2018.[12] Mendez-Soto did not reply. I now consider this fully briefed petition on its merits.

---

[4] ECF Nos. 9-13, 9-14.

[5] ECF No. 9-18 at 3.

[6] ECF Nos. 9-21, 10-2.

[7] ECF Nos. 10-7, 10-8.

[8] ECF No. 10-20.

[9] ECF No. 10-21.

[10] ECF No. 6.

[11] *Id.* at 3.

[12] ECF No. 8.

**Discussion**

**A.     Legal standards**

   *1.     Antiterrorism and Effective Death Penalty Act (AEDPA)*

If a state court has adjudicated a habeas corpus claim on its merits, a federal district court may only grant habeas relief with respect to that claim if the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[13] A state court acts contrary to clearly established federal law if it applies a rule contradicting the relevant holdings or reaches a different conclusion on materially indistinguishable facts.[14] And a state court unreasonably applies clearly established federal law if it engages in an objectively unreasonable application of the correct governing legal rule to the facts at hand.[15] Section 2254 does not, however, "require state courts to *extend*" Supreme Court precedent "to a new context where it should apply" or "license federal courts to treat the failure to do so as error."[16] The "objectively unreasonable" standard is difficult to satisfy;[17] "even 'clear error' will not suffice."[18]

---

[13] 28 U.S.C. § 2254(d).

[14] *Price v. Vincent*, 538 U.S. 634, 640 (2003).

[15] *White v. Woodall*, 134 S. Ct. 1697, 1705–07 (2014).

[16] *White*, 134 S. Ct. 1705–06.

[17] *Metrish v. Lancaster*, 569 U.S. 351, 357–58 (2013).

[18] *Wood v. McDonald*, 135 S. Ct. 1372, 1376 (2015) (per curiam) (citation omitted); *see also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question . . . is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold.").

Habeas relief may only be granted if "there is no possibility [that] fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents."[19] As "a condition for obtaining habeas relief," a petitioner must show that the state-court decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement."[20] "[S]o long as 'fairminded jurists could disagree' on the correctness of the state court's decision," habeas relief under Section 2254(d) is precluded.[21] AEDPA "thus imposes a 'highly deferential standard for evaluating state-court ruling,' . . . and 'demands that state-court decisions be given the benefit of the doubt.'"[22]

If a federal district court finds that the state court committed an error under § 2254, the district court must then review the claim de novo.[23] The petitioner bears the burden of proving by a preponderance of the evidence that he is entitled to habeas relief,[24] but state-court factual findings are presumed correct unless rebutted by clear and convincing evidence.[25]

---

[19] *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

[20] *Id.* at 103.

[21] *Id.* at 101.

[22] *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citations omitted).

[23] *Frantz v. Hazey*, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

[24] *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

[25] 28 U.S.C. § 2254(e)(1).

### 2. *Strickland*

The Sixth Amendment guarantees "the right to the effective assistance of counsel."[26] Counsel can "deprive a defendant of the right to effective assistance[] simply by failing to render 'adequate legal assistance[.]'"[27] In the hallmark case of *Strickland v. Washington*, the United States Supreme Court held that an ineffective-assistance claim requires a petitioner to show that: (1) his counsel's representation fell below an objective standard of reasonableness under prevailing professional norms in light of all of the circumstances of the particular case;[28] and (2) it is reasonably probable that, but for counsel's errors, the result of the proceeding would have been different.[29] A reasonable probability is "probability sufficient to undermine confidence in the outcome."[30] Any review of the attorney's performance must be "highly deferential" and must adopt counsel's perspective at the time of the challenged conduct so as to avoid the distorting effects of hindsight.[31] "The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practice or most common custom."[32] The burden is on the petitioner to overcome the presumption that counsel made sound trial-strategy decisions.[33]

---

[26] *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)).

[27] *Id.* (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 335–36 (1980)).

[28] *Strickland*, 466 U.S. at 690.

[29] *Id.* at 694.

[30] *Williams v. Taylor*, 529 U.S. 362, 390–91 (2000).

[31] *Strickland*, 466 U.S. at 689.

[32] *Harrington*, 562 U.S. at 104.

[33] *Id.*

5

The United States Supreme Court has described federal review of a state supreme court's decision on an ineffective-assistance claim as "doubly deferential."[34] So I "take a 'highly deferential' look at counsel's performance . . . through the 'deferential lens of § 2254(d),'"[35] and I consider only the record that was before the state court that adjudicated the claim on its merits.[36]

**B.     Evaluating Mendez-Soto's claim**

In Mendez-Soto's sole claim for relief, he alleges that his federal constitutional rights were violated by his trial counsel's failure to advise him about the right to appeal and failure to file a direct appeal on his behalf.[37] In Mendoza-Soto's state habeas appeal, the Nevada Court of Appeals found that substantial evidence supported the trial court's denial of his ineffective-assistance claim:

> Mendez-Soto failed to demonstrate [that] counsel was ineffective for failing to inform him regarding his right to appeal. The duty to inform or consult with a client with respect to appealing a judgment of conviction based on a guilty plea only arises "when the defendant inquires about the right to appeal or in circumstances where the defendant may benefit from receiving advice about the right to a direct appeal." *Id.* at 977, 267 P.3d at 799. The district court held an evidentiary hearing on this issue and found Mendez-Soto never asked counsel about an appeal nor were there circumstances where Mendez-Soto would have benefited from advice about the right to an appeal because there were no non-frivolous claims to be raised on direct appeal. Substantial evidence supports the decision of the district court, and we conclude the district court did not err by denying this claim.
>
> Mendez-Soto also failed to demonstrate [that] counsel was ineffective for failing to file an appeal on his behalf. "[T]rial counsel has a constitutional duty to file a direct appeal in two

---

[34] *Cullen*, 563 U.S. at 190 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)).
[35] *Id.*
[36] *Id.* at 181–84.
[37] ECF No. 6 at 3.

6

circumstances: when requested to do so and when the defendant expresses dissatisfaction with his conviction." *Id.* at 978, 267 P.3d at 800. At the evidentiary hearing, counsel testified he did not recall Mendez-Soto asking him to file an appeal or expressing dissatisfaction at the sentence he received. Further, counsel testified he would have filed a notice of appeal on Mendez-Soto's behalf had he been asked to file an appeal. Counsel also testified he did not receive any phone calls from Mendez-Soto after his conviction. The district court found counsel to be credible and found Mendez-Soto did not ask for an appeal and did not express dissatisfaction regarding his sentence. Further, the district court found Mendez-Soto's claims regarding telling counsel to "keep fighting" occurred during the plea negotiations and were made in regard to going to trial and not in regard to filing an appeal. Substantial evidence supports the decision of the district court, and we conclude the district court did not err by denying this claim.[38]

I find that this ruling was reasonable. Mendez-Soto testified at the post-conviction evidentiary hearing that he "thought [he] was going to be getting something between 4 and 15" years for his sentence and that he expressed those thoughts to his trial counsel.[39] When his sentence was eventually imposed, Mendez-Soto was unhappy and expressed that dissatisfaction to his trial counsel.[40] Mendez-Soto elaborated that he "called [his trial counsel] that day after court. [He] spoke to him and [his trial counsel] said there's really nothing you can do; the case is closed."[41] Mendez-Soto testified that he did not understand that he had the right to appeal "'cause [his trial counsel] never explained any of that to [him]."[42] Mendez-Soto never used the term "appeal" with his trial counsel, but "that day that [Mendez-Soto] was told that [he] could

---

[38] ECF No. 10-20 at 3–4.
[39] ECF No. 10-7 at 16, 20.
[40] *Id.* at 21.
[41] *Id.*
[42] *Id.* at 22.

7

get . . . 2 to 5 or from 4 to 15, [Mendez-Soto] asked [his trial counsel] to please keep fighting."[43] In response, his trial counsel "said that that was not really a good option. He said that that was much more risky. That [Mendez-Soto] could lose. And taking it to trial [Mendez-Soto] would lose. And that [Mendez-Soto] would get many more years than what had already been imposed."[44]

Mendez-Soto's trial counsel testified at the post-conviction evidentiary hearing that he represented Mendez-Soto from arraignment through sentencing.[45] Mendez-Soto's trial counsel explained that although he did not discuss the process of an appeal, Mendez-Soto's appellate rights "would have been one of the rights . . . discussed" when going through the plea agreement.[46] Although Mendez-Soto received the maximum sentence allowed, his trial counsel did not remember Mendez-Soto expressing dissatisfaction with his sentence.[47] Indeed, Mendez-Soto's trial counsel testified that he did not remember speaking with Mendez-Soto following the sentencing hearing and that he did not remember Mendez-Soto expressing a desire to file an appeal or challenge his conviction.[48] Mendez-Soto's trial counsel stated that if Mendez-Soto made the request, he "would have had to file a notice of appeal," but he could not think of any non-frivolous issues to raise in an appeal.[49]

---

[43] *Id.*

[44] *Id.*

[45] ECF No. 10-7 at 6–7.

[46] *Id.* at 10–11. Mendez-Soto's plea agreement provided that he understood that he was waiving and forever giving up "[t]he right to appeal the conviction with the assistance of an attorney," meaning he "unconditionally waiv[ed his] right to a direct appeal of [his] conviction." ECF No. 9-14 at 5–6.

[47] *Id.* at 13.

[48] *Id.* at 13–14.

[49] *Id.* at 15.

8

I first address Mendez-Soto's contention that his trial counsel failed to advise him about the right to appeal. The Nevada Supreme Court has "held that trial counsel does not have a constitutional duty to always inform his client of, or consult with his client about, the right to a direct appeal when the client has been convicted pursuant to a guilty plea."[50] Instead, in the guilty-plea context, trial counsel's duty arises "only when the defendant inquires about the right to appeal or in the circumstances where the defendant may benefit from receiving advice about the right to a direct appeal, 'such as the existence of a direct appeal claim that has reasonable likelihood of success.'"[51]

The testimony presented at the post-conviction evidentiary hearing was inconsistent. Mendez-Soto testified that his trial counsel never explained that he had the right to appeal, whereas Mendez-Soto's trial counsel testified that he would have discussed Mendez-Soto's appellate rights when going through the plea agreement.[52] Nonetheless, the Nevada Court of Appeals reasonably determined that Mendez-Soto never asked his trial counsel about the right to appeal and there were no non-frivolous claims to be raised on direct appeal such that Mendez-Soto would have benefited from advice about the right to an appeal.[53] In fact, Mendez-Soto testified that he never used the term "appeal" with his trial counsel.[54] And trial counsel testified that he could not think of any non-frivolous issues to raise in an appeal because Mendez-Soto was sentenced "within the guidelines allowed by law" and the State and the state district court

---

[50] *Toston v. State*, 267 P.3d 795, 799 (Nev. 2011).
[51] *Id.* (citing *Thomas v. State*, 979 P.2d 222, 223 (Nev. 1999)).
[52] ECF No. 10-7 at 10–11, 22.
[53] *See Toston*, 267 P.3d at 799.
[54] ECF No 10-7 at 22.

9

followed the plea agreement.[55] Accordingly, even if Mendez-Soto's trial counsel did not advise him about the right to appeal, his duty to do so was not triggered, so the Nevada Court of Appeals reasonably concluded that he failed to demonstrate that his trial counsel was deficient in this regard.[56]

I now turn to Mendez-Soto's contention that his trial counsel failed to file a direct appeal. The *Strickland* "test applies to claims . . . that counsel was constitutionally ineffective for failing to file a notice of appeal."[57] When counsel "disregards specific instructions from the defendant to file a notice of appeal," counsel has acted unreasonably.[58] However, "where the defendant neither instructs counsel to file an appeal nor asks that an appeal not be taken" the question is "whether counsel in fact consulted with the defendant about the appeal."[59] Consulting means "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes."[60] "If counsel has not consulted with the defendant, the court must in turn ask . . . whether counsel's failure to consult with the defendant itself constitutes deficient performance."[61] Following the rejection of a bright-line rule, the Supreme Court concluded that "counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal . . . , or (2) that this particular defendant reasonably demonstrated to counsel that

---

[55] *Id.* at 15.
[56] *Strickland*, 466 U.S. at 688.
[57] *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000).
[58] *Id.*
[59] *Id.* at 478.
[60] *Id.*
[61] *Id.*

10

he was interested in appealing."[62] If the defendant pleaded guilty, "the court must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights."[63]

Although Mendez-Soto asked his trial counsel to "keep fighting," it appears that this statement was made during the plea process, not following Mendez-Soto's sentencing, because his trial counsel's response to the comment was an explanation that going to trial would be risky.[64] Therefore, because this statement—and no other comment—can be construed as being a "specific instruction[ ] from the defendant to file a notice of appeal," the next question is "whether counsel in fact consulted with the defendant about the appeal."[65] There is no evidence that Mendez-Soto's trial counsel discussed the advantages or disadvantages of an appeal or made an effort to ascertain Mendez-Soto's wishes, so the next question is "counsel has a constitutionally imposed duty to consult with the defendant about an appeal."[66] Mendez-Soto's trial counsel testified that he could not think of any non-frivolous issues to raise in an appeal.[67] Indeed, the state district court sentenced Mendez-Soto in compliance with the plea agreement, and the plea agreement provided that Mendez-Soto was waiving and forever giving up "[t]he right to appeal the conviction with the assistance of an attorney."[68] Therefore, it cannot be concluded that "a rational defendant would want to appeal."[69] Finally, the Nevada Court of

---

[62] *Id.* at 480.
[63] *Id.*
[64] ECF No. 10-7 at 22.
[65] *Roe*, 528 U.S. at 477–78.
[66] *Id.* at 478, 480.
[67] ECF No. 10-7 at 15.
[68] *Id.*; ECF No. 9-14 at 5–6.
[69] *Roe*, 528 U.S. at 480.

11

Appeals reasonably concluded that Mendez-Soto did not express dissatisfaction with his sentence such that he reasonably demonstrated to his trial counsel that he was interested in appealing.[70] Mendez-Soto testified that he was dissatisfied with his sentence and he informed him trial counsel of his dissatisfaction during a telephone call the day after his sentencing hearing.[71] But Mendez-Soto's trial counsel testified that he did not remember Mendez-Soto expressing dissatisfaction about his sentence and did not remember speaking to Mendez-Soto further following a discussion in the courtroom after the sentencing hearing.[72] As the Nevada Court of Appeals noted, the state district court found Mendez-Soto's trial counsel to be credible.[73] Accordingly, because Mendez-Soto did not specifically instruct his trial counsel to file an appeal and because Mendez-Soto's trial counsel's duty to consult with Mendez-Soto about an appeal was not triggered, the Nevada Court of Appeals reasonably concluded that Mendez-Soto failed to demonstrate that his trial counsel was deficient in not filing an appeal on his behalf.[74] Mendez-Soto is not entitled to federal habeas relief.

**C.  Certificate of Appealability**

The right to appeal from the district court's denial of a federal habeas petition requires a certificate of appealability. To obtain that certificate, the petitioner must make a "substantial showing of the denial of a constitutional right."[75] "Where a district court has rejected the

---

[70] *Id.*

[71] ECF No. 10-7 at 21.

[72] *Id.* at 13.

[73] *See Rice v. Collins*, 546 U.S. 333, 341–42 (2006) ("Reasonable minds reviewing the record might disagree about the prosecutor's credibility, but on habeas review that does not suffice to supersede the trial court's credibility determination.").

[74] *Strickland*, 466 U.S. at 688.

[75] 28 U.S.C. § 2253(c).

12

constitutional claims on the merits," that showing "is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."[76] Because I have rejected Mendez-Soto's constitutional claim on its merits, and he has not shown that this assessment of his claim was debatable or wrong, I find that a certificate of appealability is unwarranted in this case.

## Conclusion

IT IS THEREFORE ORDERED that the Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 **[ECF No. 6] is DENIED**, and Mendez-Soto is **denied a certificate of appealability**.

IT IS FURTHER ORDERED that the Clerk of Court is directed to SUBSTITUTE Jerry Howell for Jo Gentry as the respondent warden on the docket for this case under Federal Rule of Civil Procedure 25(d), ENTER JUDGMENT accordingly, and CLOSE THIS CASE.

Dated: February 9, 2020.

_____
U.S. District Judge Jennifer A. Dorsey

---

[76] *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also James v. Giles*, 221 F.3d 1074, 1077–79 (9th Cir. 2000).